USCA1 Opinion

 

 April 15, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _____ No. 91-1415 JOHN FORWARD Plaintiff, Appellant v. GEORGE THOROGOOD, et al., Defendants, Appellees. ___________ ERRATA SHEET The opinion of this Court issued on January 29, 1993, is amended as follows: On page 4, footnote 1, line 1: delete the comma between "Nimmer on Copyright" and the " " sign. ___________________ On page 5, line 3: delete the comma between "Nimmer" and ______ the " " sign. On page 9, line 5: delete the comma between "Nimmer" and ______ the " " sign. January 29, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-1415 JOHN FORWARD, Plaintiff-Appellant, v. GEORGE THOROGOOD, et al., Defendants-Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Cyr and Boudin, Circuit Judges, ______________ and Hornby,* District Judge. ______________ ____________________ Richard J. Shea with whom Kenneth M. Goldberg was on brief for _______________ ____________________ appellant. Gordon P. Katz with whom Kim E. Perry and Jay M. Fialkov were on ______________ ____________ ______________ brief for appellee. ____________________ ____________________ * of the District of Maine, sitting by designation. BOUDIN, Circuit Judge. This is an appeal from a final _____________ judgment determining the copyright ownership of certain unpublished tape recordings of the musical group George Thorogood and the Destroyers (the "Band"). The district court ruled that the Band held the copyright to the tapes and enjoined appellant John Forward from making commercial use of the recordings. We affirm. The basic facts can be briefly stated. Forward is a music aficionado and record collector with a special interest in blues and country music. In 1975, Forward was working as a bus driver when he first met Thorogood at a Boston nightclub where the Band was performing. Forward was immediately taken with the Band's act and struck up a friendship with Thorogood. Thorogood and his fellow band members, a drummer and a guitar player, had been playing together at East Coast colleges and clubs since 1973. Upon learning that the Band had yet to release its first album, Forward began a campaign to persuade his friends at Rounder Records to sign the Band to a recording contract. Rounder Records is a small, Boston-based record company specializing in blues and folk music. As part of this effort, Forward arranged and paid for two recording sessions for the Band in 1976. The purpose of the sessions was to create a "demo" tape that would capture Rounder Records' interest. At Forward's invitation, one of the principals of -2- -2- Rounder Records attended the Band's second recording session. Other than requesting specific songs to be recorded, Forward's contribution to the sessions was limited to arranging and paying for them. Rounder Records was impressed by what it heard; the day after the second session, it arranged to sign the Band to a contract. The Band agreed that Forward could keep the tapes for his own enjoyment, and they have remained in his possession ever since. In 1977, the Band's first album was released under the Rounder Records label. Forward was singled out for "special thanks" in the album's acknowledgements. Since then, Thorogood and the Destroyers have released a number of records and gone on to achieve success as a blues/rock band. The dispute between the parties arose in early 1988, when Forward told the Band that he intended to sell the 1976 tapes to a record company for commercial release. The Band objected, fearing that release of the tapes would harm its reputation; they were, the district court found, of "relatively primitive quality" compared to the Band's published work. On July 5, 1988, Forward filed suit in the district court, seeking a declaratory judgment that he held the common law copyright to the tapes. Determination of copyright ownership is governed by the common law of copyright because the tapes are unpublished and were recorded -3- -3- in 1976, prior to the January 1, 1978, effective date of the Copyright Act of 1976, 17 U.S.C. 101 et seq.1 The Band ______ responded with a counterclaim for declaratory and injunctive relief. In the district court, Forward advanced a number of theories in support of his claim to copyright ownership. After a five-day bench trial, the district court filed its findings of fact and conclusions of law, ruling that Forward did not hold the copyright under any of the theories he advanced. Forward v. Thorogood, 758 F. Supp. 782 (D. Mass. _______ _________ 1991). The court entered judgment for the Band, declaring Thorogood and other Band members to be the copyright owners and permanently enjoining Forward from commercially exploiting the tapes. Forward now appeals. On this appeal, Forward's first theory in support of his claim of copyright ownership is based on his ownership and possession of the tapes. According to Forward, ownership of a copyrightable work carries with it ownership of the copyright. Alternatively, he argues that the evidence mandated a finding that the copyright was implicitly ____________________ 1See M. Nimmer & D. Nimmer, 1 Nimmer on Copyright ___ ____________________ 2.10[A] n.18, at 2-147 (1992) ("Nimmer"). See also Roth v. ______ ________ ____ Pritikin, 710 F.2d 934, 938 (2d Cir.) (1976 Act, which ________ preempts the common law of copyright as of January 1, 1978, determines the rights but not the identity of the copyright owners of works created prior to that date), cert. denied, ____________ 464 U.S. 961 (1983). -4- -4- transferred to him along with the demo tapes. We find no merit in either claim. The creator of a work is, at least presumptively, its author and the owner of the copyright, Community for Creative ______________________ Non-Violence v. Reid, 490 U.S. 730, 737 (1989). The ____________ ____ performer of a musical work is the author, as it were, of the performance. 1 Nimmer 2.10[A](2)(a), at 2-149. The ______ courts, in applying the common law of copyright, did in a number of cases infer from an unconditional sale of a manuscript or painting an intent to transfer the copyright. 3 Nimmer 10.09[B], at 10-76.1. This doctrine, often ______ criticized and subject to various judicial and statutory exclusions, id., is the source of Forward's principal claim. __ The difficulty for Forward is that even under the doctrine this physical transfer merely created a presumption and the ultimate question was one of intent. Id. __ In this case, the district court found that "[n]either the band nor any of its members ever conveyed, or agreed to convey, their copyright interest in the tapes to Forward." 758 F. Supp. at 784. Rather the Band allowed Forward to keep the tapes solely for his personal enjoyment. Id. Forward's __ disregard of this central finding is premised on a highly artificial attempt to claim "constructive possession" of the tapes from the outset and then to argue that any reservation by the Band at the end of the sessions was an invalid attempt -5- -5- to reconvey or qualify his copyright. The reality is that the Band never surrendered the copyright in the first place and the transfer of the tapes' ownership to Forward was not a sharply defined event distinct from the reservation of the Band's rights. Forward argues that the district court's finding is mistaken, pointing in particular to a 1979 check for $500 made out to him from Rounder Records on behalf of the Band. A notation indicates that the check was for an "advance option" on the tapes, and Forward argues that the check constitutes an "unambiguous admission" that he owned the copyright. The Band counters that, shortly before Forward was given the check, another demo tape made by the Band had been sold by a third party to a record company. The Band claims that, to prevent another such misadventure, it sought an option on the physical tapes held by Forward. Although Forward contests this explanation, the district court heard the evidence, chose reasonably between conflicting inferences as to the import of the check, and that is the end of the matter. See Anderson v. City of Bessemer City, 470 U.S. 564, ___ ________ _____________________ 573-74 (1985); Fed. R. Civ. P. 52(a). Forward's second theory of copyright ownership involves the "works for hire" doctrine. Under this doctrine, a judicially developed notion later codified in the Copyright Act of 1909, 17 U.S.C. 1 et seq., an employer is deemed the ______ -6- -6- "author" and copyright holder of a work created by an employee acting within the scope of employment. Although initially confined to the traditional employer-employee relationship, the doctrine has been expanded to include commissioned works created by independent contractors, with courts treating the contractor as an employee and creating a presumption of copyright ownership in the commissioning party at whose "instance and expense" the work was done. See, ____ e.g., Murray v. Gelderman, 566 F.2d. 1307, 1310 (5th Cir. ___ ______ _________ 1978); Brattleboro Publishing Co. v. Winmill Publishing ____________________________ ___________________ Corp., 369 F.2d 565, 567-68 (2d Cir. 1966).2 Forward _____ maintains that the tapes, created at his "instance and expense," are commissioned works to which he holds the copyright. The district court rejected this claim, finding that the evidence did not support it. The court said that, although Forward booked and paid for the studio time, he neither employed nor commissioned the band members nor did he compensate or agree to compensate them. 758 F. Supp. at 784. While the lack of compensation may not be decisive, see, ____ e.g., Community for Creative Non-Violence, 490 U.S. at 734 ___ _____________________________________ ____________________ 2 The Copyright Act of 1976 altered the works for hire doctrine so that only certain types of commissioned works qualify as works for hire, and then only if the parties have agreed in writing to treat it as such. See Community ___ _________ for Creative Non-Violence, 490 U.S. at 738. The Act's __________________________ provisions on works for hire operate prospectively and do not govern this case. -7- -7- (donated commissioned work), the evidence as a whole amply supports the trial judge's conclusion. Nothing suggests that the tapes were prepared for the use and benefit of Forward. Rather, the purpose was to provide demo tapes to entice a recording company. Forward was a fan and friend who fostered this effort, not the Archbishop of Saltzburg commissioning works by Mozart. Finally, Forward argues that he is at least a co-owner of the copyright as a "joint author" of the tape recordings. The doctrine of joint authorship, recognized at common law, is incorporated in the current Copyright Act of 1976. 17 U.S.C. 201(a). In appraising this claim, our concern is with Forward's musical or artistic contribution rather than his encouragement to the Band or his logistical support. The district court found that "Forward made no musical or artistic contribution" to the tapes, explaining that Forward did not serve as the engineer at the sessions or direct the manner in which the songs were played or sung. 758 F. Supp. at 784. The trial judge noted that Forward did request that certain songs be played but "the band then played those songs in precisely the same manner that it always played them." Id. The district court's concise and __ unqualified findings are fully supported by the evidence Forward has only one legal prop for his contrary claim and it is a weak one. In the House Report on the Copyright -8- -8- Act of 1976, the committee observed that the copyright in sound recordings "will usually, though not always, involve `authorship' both . . . [by the artist and by] the record producer responsible for setting up the recording session, capturing and electronically processing the sounds, and compiling and editing them to make the final sound recording." H. Rep. No. 94-1476, 94th Cong., 2d Sess. 56 (1976). It is apparent from this passage that the "producer" envisaged by the committee is one who engages in artistically supervising and editing the production. See generally 1 _____________ Nimmer 2.10[A](2)(b), at 2-150 to 2-151. That is exactly ______ what Forward did not do in this case. The Band has sought an award of attorney's fees expended in this court, arguing that Forward's appeal is frivolous. We think that the appeal comes very close to the line but does not quite step over it and therefore deny the motion. Affirmed. ________ -9- -9-