On this appeal from a jury verdict after trial before Judge Nancy Margaret Russo, I dissent. Not only does the majority affirm the conviction on a theory conspicuously avoided by the State and never presented to the jury, it adopts a standard of evidentiary sufficiency that flouts any constitutional standard of reasonableness. In adopting this dangerously erroneous theory, the majority has utterly ignored the State's actual theory of guilt, which is based upon a plainly incorrect jury instruction that cannot be sustained under any circumstances.
As thoroughly demonstrated in the majority opinion, E.W., who is learning disabled,[4] testified on direct examination that Blankenship placed his private by hers, but did not testify that he penetrated her vagina. On cross-examination she testified that he penetrated her orally, anally, and vaginally on the date in question, that he had also done so on a prior occasion, and that she informed her mother, the police, and a physician of the oral and anal penetration when she was taken for an examination. The physician, Dr. Thomas Lukens, M.D., testified that no such complaints of oral or anal penetration were made, no other evidence of oral or anal contact was presented, and the State did not charge Blankenship with anything other than vaginal penetration on September 11, 1998.
When E.W. was taken to a hospital immediately after the incident, Dr. Lukens testified he found abrasions on her labia majora, labia minora, and posterior fourchette, but found an intact hymen and no evidence of medical penetration of the vagina. Furthermore, a rape kit failed to reveal evidence of semen or foreign hair. In closing argument, the prosecutor did not rely on E.W.'s testimony, but told the jury instead that the legal and medical definitions of penetration differed, and that penetration beyond the labia majora to the labia minora was sufficient to sustain the rape charge. Neither the judge nor Blankenship objected to these remarks, and the judge instructed the jury as follows:
 Penetration of the external female genitalia known as the vulva or the labia is sufficient penetration to constitute vaginal rape. Penetration of the vagina is not necessary, nor is it necessary that the hymen be ruptured.
Blankenship objected to this instruction when offered by the State, but did not object to it after it had been given to the jury, and the jury returned verdicts of guilty for rape and gross sexual imposition. On appeal, Blankenship essentially challenged the jury instruction through the insufficiency claim, arguing that the medical evidence was insufficient to sustain the conviction, and that no other evidence of penetration was presented. He has not challenged the weight of the evidence on appeal, nor does he challenge the jury instruction independently of his sufficiency challenge. The State's argument in defense of sufficiency, however, has at all times been limited to defending the jury instruction and arguing that the medical evidence alone was sufficient to sustain the verdict. It does not challenge Blankenship's assertion that there is no evidence of penetration other than the medical testimony about external abrasions.
I begin by stating explicitly what the majority opinion implicitly, and correctly, concedes: it was error to instruct the jury that penetration of the vagina was unnecessary to sustain the rape conviction here. R.C.2907.02 requires a showing of sexual conduct to support a rape conviction. That term is defined by R.C. 2907.01(A) as follows:
 Sexual conduct means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
The State did not rely on the victim's testimony to show that Blankenship penetrated her, and argues here, as it did at trial, that the medical evidence of abrasions is sufficient to prove the penetration necessary to sustain a rape conviction. The State argues that penetration past the labia majora in order to cause the abrasions found on the labia minora, is sufficient to complete vaginal * * * intercourse. R.C.2907.01(A).
The cases cited by the State, however, have not sustained convictions based solely on evidence of abrasions to the vulva or labia, but have instead stated only that an intact hymen will not bar a rape conviction.[5] In all of these cases the victims testified to vaginal penetration, and the evidence of labial abrasions or other injury supported that testimony — nowhere has evidence of labial abrasions alone been found sufficient to sustain a rape conviction.
The question then becomes what the General Assembly intended when it specified in R.C. 2907.01(A) the phrase the insertion, however slight, of any body part * * * into the vaginal * * * cavity of another. The Supreme Court of Ohio, in State v. Wells,[6] recently answered the same question when the issue was whether insertion of a penis between the victim's buttocks but not into the anus itself was rape or attempted anal rape. The court held that the common everyday meaning of a word as defined in a dictionary should be utilized in statutory construction. Because cavity is defined as a natural hollow place within the body, the court determined that the anal cavity was the lower portion of the alimentary canal and not the buttocks which are not `within the body.'[7]
The court also found that legislative intent could be found by an examination of R.C. 2907.01(B) which defined Sexual Contact as:
 any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttocks, [or] public region * * * for the purpose of sexually arousing or gratifying either person.
It held that under R.C. 2902.04(A), the statutes must be construed in favor of an accused and it was doubtful that the General Assembly intended to include buttocks within the phrase anal cavity.
 If the evidence shows that the defendant made contact only with the victim's buttocks, there is not sufficient evidence to prove the defendant guilty of the crime of anal rape. As a corollary, where the evidence shows that the defendant attempts to penetrate the victim's anus, and, for whatever reason, fails to do so and makes contact only with the buttocks, there is sufficient evidence to prove the defendant guilty of the crime of attempted anal rape.[8]
Applying the Wells analysis to the case sub judice, Random House Webster's Unabridged Dictionary, Second Edition, 1998, defines vagina as: a passage leading from the uterus to the vulva and the vulva as: the external female genitalia.
In State v. Shoop,[9] a medical expert testified that the labia and posterior fourchette are not considered a part of the vaginal cavity. Dr. Lukens testified that the abrasions of the labia did not fit the medical definition of penetration, but did not elaborate on what that definition was, and he found no evidence of medical penetration of the vagina. Without some other definition to guide us in interpreting the statute, we must assume that vaginal cavity means that natural hollow passage within the body between the uterus and the female external genitalia.
The Ohio Jury Instructions define vaginal intercourse as penetration of the penis into the vagina.[10] The State's proffered instruction defining penetration as something less than entry into the vagina was incorrect, and the judge erred in giving that instruction to the jury. Although rupture of the hymen is unnecessary, R.C. 2907.02 still requires evidence of penetration into the vaginal cavity. Furthermore, contrary to the prosecutor's argument, there is no evidence that the State of Ohio has adopted a legal definition of vaginal cavity different from that in common usage.
The majority, aware that it cannot sustain the rape conviction solely on the medical evidence presented here, has determined that E.W.'s cross-examination testimony is sufficient to sustain the conviction, despite the fact that the State never relied on this testimony at trial and has not defended the verdict on those grounds in this appeal. The issue on appeal has at all times been whether the jury instruction was correct and thus whether the medical evidence alone was sufficient to sustain the rape conviction. Therefore, my first objection to the majority decision is that it affirms the conviction on a theory never presented to the jury, and leaves intact a verdict that very likely was based on an unsound legal theory. While an appellate court ordinarily is free to affirm a judge's decision on grounds other than those employed by the judge,[11] we are not free to affirm a judgment of conviction on a theory not presented to a jury, nor are we free to affirm a jury verdict where it is impossible to tell whether the defendant was convicted on an improper theory.[12]
The jury here was told that it could convict Blankenship of rape on medical evidence that was insufficient to establish penetration, and it most likely convicted on that theory, because it was the only theory of guilt offered. In its opening statement, closing argument, and elsewhere throughout trial and appeal, the State at all times relied solely on the theory that the jury could convict on the medical evidence alone. The State never once even suggested that the jury rely upon E.W.'s cross-examination testimony, much less present such a theory in a focused or otherwise cognizable sense.[13] To affirm the conviction on a theory that the jury likely never considered deprives Blankenship of his fundamental constitutional rights to due process and a jury trial — the jury was never asked to consider E.W.'s reliability, and even the majority should concede it is by no means clear the jury would have convicted Blankenship on this basis.
My second objection to the majority's resolution goes beyond simple disagreement because I believe the decision threatens the constitutional rights of all criminal defendants. By deciding that E.W.'s cross-examination testimony meets the legal test for sufficiency and thus can be used as evidence of vaginal penetration, the majority has not only misinterpreted, but utterly misused, the distinction between weight and sufficiency of the evidence set forth in State v. Thompkins.[14] The majority's facile conclusion that one need not assess the weight of E.W.'s testimony ignores the obvious fact that the evidence fails in every respect to meet the threshold necessary to allow any rational trier of fact[15] to give it credit. While the majority asserts that it must assess sufficiency to determine whether the evidence, if believed, would sustain a conviction, the analysis fails to recognize that the legal standard of sufficiency presumes a rational trier of fact and determines whether reasonable minds could find the defendant guilty beyond a reasonable doubt.[16] The threshold question, therefore, is not the effect of the evidence if believed but, as an initial matter, whether the evidence is capable of belief. Only when this question is resolved does the inquiry turn to an assessment of the weight of the evidence because the reviewing court must then decide whether the evidence, while sufficient, is substantial.[17]
In civil matters, which are theoretically and rhetorically considered less important than criminal matters, courts recognize that, despite claims that testimony is subject to a credibility determination, evidence can be stripped of all consideration where it is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it.[18] In summary judgment cases the United States Court of Appeals for the Seventh Circuit, Chief Judge Posner, has recognized that a witness's testimony is subject to sufficiency analysis in exceptional cases where the surrounding circumstances render it so unreliable that no reasonable fact finder could give it credit.[19]
Simply stated, testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it.[20] This threshold determination should carry even more force in criminal cases,[21] where the evidence must be sufficient to satisfy the reasonable doubt burden.[22]
The majority elevates E.W.'s testimony to a level it was not intended, and certainly is not entitled to reach. The State questioned her on direct examination only to establish that some incident occurred — the prosecutor did not seek to have her testify that penetration occurred. On cross-examination, Blankenship's lawyer obviously did not question E.W. with a view toward bolstering the State's case, but instead intended to cast doubt on the reliability of her testimony by showing either that E.W. was suggestible, that her memory was faulty, or both, since she testified to events that were directly contrary to the testimony of other State's witnesses, most notably Dr. Lukens. Under the circumstances, it was apparent that E.W.'s testimony was too confused and inconsistent to be reliable, and that the only evidence of penetration worthy of any consideration was the medical evidence submitted through Dr. Lukens. The State recognized the viability of this defense strategy because it never sought to rely on the details of E.W.'s testimony, but claimed instead that Blankenship could be convicted on the basis of the medical evidence alone. The State never argued to the jury that it should rely on E.W.'s cross-examination testimony, just as it never argued to this court that we should rely on that testimony. Despite the fact that the State has conceded that E.W.'s testimony cannot be relied on to support the element of vaginal penetration, and that it expressly sought conviction on an alternative, erroneous basis, the majority ignores the prosecutorial theory and the obvious unreliability of the evidence in delivering a stunning and frightening affirmance. By holding that there is no duty to make a threshold determination that no rational trier of fact could find penetration on this evidence, the majority has wrought a dire consequence — a prosecutor now can survive a motion to acquit and win a chance to appeal to a jury's passions by presenting patently unreliable evidence, while a defense lawyer must think twice before exposing a witness's unreliability to the jury. In this case, it was clear that E.W. did not intend to mislead anyone, but that she was suggestible and, unfortunately, generally incapable of making the detailed distinctions necessary for proving guilt in this case. By revealing this infirmity to the jury, however, Blankenship is now held to have himself elicited the critical evidence needed to sustain his rape conviction. The majority's decision threatens far-reaching, unfair, and unconstitutional results.
[D]ue process requires guilt to be determined based upon the case as presented to the jury.[23] The majority has convicted Blankenship of rape on a theory of guilt never raised at trial and condemns him to spend his life in prison with no possibility of parole in light of an erroneous jury instruction on vaginal rape. I would reverse the rape conviction as based on insufficient evidence, and uphold the gross sexual imposition conviction. Therefore, I dissent.
[4] Although stated as a learning disability, it appears from the record that she may be developmentally disabled.
[5] See, e.g., State v. Carpenter (1989), 60 Ohio App.3d 104, 105,573 N.E.2d 1206, 1207-08.
[6] (2001), 91 Ohio St.3d 32, 740 N.E.2d 1097.
[7] Id. at 34, 740 N.E.2d at 1099.
[8] Id. at 35, 740 N.E.2d at 1100.
[9] (1993), 87 Ohio App.3d 462, 622 N.E.2d 665.
[10] 4 Ohio Jury Instructions, Section 507.02(A)(1), at 188, Section507.02(A)(2) at 192.
[11] State v. Peagler (1996), 76 Ohio St.3d 496, 668 N.E.2d 489, paragraph one of the syllabus.
[12] Dunn v. United States (1979), 442 U.S. 100, 106, 99 S.Ct. 2190,2194, 60 L.Ed.2d 743, 750; Chiarella v. United States (1980), 445 U.S. 222,236-37 n. 21, 100 S.Ct. 1108, 1118-19 n. 21, 63 L.Ed.2d 348, 361-62 
n. 21; Cola v. Reardon (C.A.1, 1986), 787 F.2d 681, 696, certiorari denied (1986), 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351.
[13] Cola, 787 F.2d at 693.
[14] (1997), 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541, 546-47.
[15] Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,2789, 61 L.Ed.2d 560, 573.
[16] State v. Getsy (1998), 84 Ohio St.3d 180, 193, 702 N.E.2d 866,881-82 (citations omitted).
[17] Id.
[18] Anderson v. City of Bessemer City (1985), 470 U.S. 564, 575,105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 529.
[19] In re Chavin (C.A.7, 1998), 150 F.3d 726, 728; Seshadri v. Kasraian (C.A. 7, 1997), 130 F.3d 798, 802.
[20] Id.
[21] The standard has been applied, and reasonably does apply, in criminal cases. United States v. Hach (C.A.7, 1998), 162 F.3d 937,942 n. 1.
[22] See, e.g., Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,252-54, 106 S.Ct. 2505, 2512-13, 91 L.Ed.2d 202, 214-15 (sufficiency test is viewed in light of applicable burden of proof).
[23] Cola v. Reardon, supra, 787 F.2d at 683.