Jonathan MORRILL, an Individual and J.M. Productions, a sole proprietorship, Plaintiffs,

v.

The SMASHING PUMPKINS, an entity form unknown, Billy Corgan, an individual, Virgin Records America, entity form unknow (sic), Modi–Vational Films, entity form unknown, and Does 1–100, Defendants.

No. CV00–06818CM(JWJX).

United States District Court, C.D. California.

Aug. 30, 2001.

David R. Olan, Olan Law Corporation, Los Angeles, CA, for Plaintiffs.

Bert H. Deixler, Hayes F. Michel, Jennifer M. Crome, Proskauer Rose LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MORENO, District Judge.

Presently before the Court is Defendants The Smashing Pumpkins, Billy Corgan, Virgin Records America, and Modivational Films' Motion for Summary Judgment. Having considered the moving papers, the opposition, the reply, and oral argument in support thereof, the Court hereby *grants* Defendants' Motion for the following reasons.

### I.

### *Statement of Facts*

The allegations in this case arise from events transpiring in St. Petersburg, Florida in 1986. At that time, Plaintiffs Jonathan Morrill and J.M. Productions ("Morrill") completed an "original music video/documentary" entitled "Video Marked," which depicted Defendant Corgan and his then-existing music group, The Marked. *See* Compl. ¶ 13. "The purpose of this endeavor was to create an assortment of music videos for Corgan and his bandmates in order to help them get started with their musical careers." *See* Compl. ¶ 12.

Video Marked was created around the time when Corgan and The Marked were staying at Morrill's home in St. Petersburg. Upon completion of the video, Video Marked was played at some clubs where The Marked performed, as a promotional tool for the band. At some point later in 1986, Corgan left St. Petersburg. After Corgan's departure, Morrill noticed that one of the copies of Video Marked was missing, and his "prime suspect" was Corgan. *See* Morrill Dep. at 133:10–11. Morrill never mentioned the missing video to Corgan, nor did he pursue any further use of Video Marked until 1996, when he approached Corgan at a Smashing Pumpkins concert and inquired whether Corgan would consider marketing Video Marked. Upon Corgan's refusal, Morrill abandoned any planned use of Video Marked.

Allegedly unbeknownst to Morrill, in 1994 Defendants Corgan, The Smashing Pumpkins, and Virgin Records America released a video entitled "Vieuphoria," which contained short clips of images taken from Video Marked. Vieuphoria, a ninety-minute video, contained about forty-five seconds of material from Video Marked. Although Vieuphoria was released in 1994, it was not until 1998 that Plaintiff purportedly learned of its existence.

On May 22, 2000, Morrill filed suit in the Superior Court of the State of California, County of Los Angeles. Removal to this Court was ordered because of the likelihood that Plaintiffs' claims were at bottom disguised copyright claims subject to preemption under 17 U.S.C. § 301(a). Plain-

tiffs moved to remand and Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). This Court dismissed Plaintiffs motion and treated Defendants' motion as a motion for summary judgment, ultimately dismissing Plaintiffs' breach of contract, negligent misrepresentation, and constructive trust claims. Plaintiffs filed a First Amended Complaint, followed by a Second Amended Complaint. On July 19, 2001, Defendants moved for summary judgment on Plaintiffs' remaining claims for copyright infringement, breach of confidence, fraud and deceit, declaratory relief, and injunctive relief. Defendants' Motion is presently before this Court.

## II.

### *Applicable Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In a trilogy of 1986 cases, the Supreme Court clarified the applicable standards for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Summary judgment is not treated as "a disfavored procedural shortcut" but as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III.

### *Analysis*

#### A. Copyright Infringement

 Morrill alleges that he is the sole owner of the copyright for Video Marked. He asserts that the certificate of registration he obtained in 1998 from the Register of Copyrights is proof of his sole copyright ownership. Morrill further contends that use, without his authorization, of portions of Video Marked in The Smashing Pumpkins' video, Vieuphoria, is an infringement of his copyright in Video Marked.

Defendants allege that Morrill's copyright infringement claims are invalid for several reasons: (1) Defendant Corgan is a joint author of Video Marked and there-

fore cannot be held liable for infringing the copyright of a work he co-owns; (2) Morrill's claims are barred by the copyright statute of limitations, which states: "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued," 17 U.S.C. § 507(b); and (3) Morrill's claims are barred by the doctrine of laches.

Section 101 of the Copyright Act of 1976 defines a "joint work": "A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. As the Ninth Circuit has determined, "for a work to be a 'joint work' there must be (1) a copyrightable work, (2) two or more 'authors,' and (3) the authors must intend their contributions be merged into inseparable or interdependent parts of a unitary whole." *Aalmuhammed v. Lee,* 202 F.3d 1227, 1231 (9th Cir.2000).

It is undisputed that Video Marked is a copyrightable work and that it was intended to serve as a unitary whole, specifically as a music video created to promote Defendant Corgan and his band, The Marked. It is also undisputed that Morrill directed, produced, and edited the video and that Corgan and The Marked composed and performed the music played in the video. Both contributions, Morrill's filming and editing of the video and Corgan's performance and composition of the songs, satisfy the requisite level of copyrightable expression necessary to support a claim of joint authorship. *See Ashton–Tate Corp. v. Ross,* 916 F.2d 516, 521 (9th Cir.1990) ("our circuit holds that joint authorship requires each author to make an independently copyrightable contribution").

Merely making a copyrightable contribution is not enough to establish joint authorship, however. *See Aalmuhammed,* 202 F.3d at 1232 ("authorship is not the same thing as making a valuable and copyrightable contribution"). Each contributor must also be deemed an "author" of the work. The Ninth Circuit's *Aalmuhammed* decision lists three criteria for determining, in the absence of a contract, whether a contributor should be considered an "author" for the purpose of joint authorship: (1) whether the purported author controls the work and is " 'the inventive or master mind' who 'creates, or gives effect to the idea,' " *Aalmuhammed,* 202 F.3d at 1234 (quoting *Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 61, 4 S.Ct. 279, 28 L.Ed. 349 (1884)); (2) whether the "putative coauthors make objective manifestations of shared intent to be coauthors," *Id.;* and (3) whether "the audience appeal of the work turns on both contributions and 'the share of each in its success cannot be appraised.' " *Id.* (quoting *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.,* 140 F.2d 266, 267 (2d Cir.1944)).

While these factors are helpful in determining whether a contributor should be considered a joint author of the work, the *Aalmuhammed* court noted that "[t]he factors articulated in this decision … cannot be reduced to a rigid formula, because the creative relationships to which they apply vary too much." *Aalmuhammed,* 202 F.3d at 1235. In applying these three criteria to the facts involved in *Aalmuhammed,* the Ninth Circuit found that a consultant on Spike Lee's movie, "Malcolm X," was not a joint author of the film. The court determined that Aalmuhammed's work as an "Islamic Technical Consultant," which included some original script writing, did not rise to the level of control, objective intent, and impact on the film's success necessary to satisfy the requirements for joint authorship.

Morrill's claim that he is the sole author of Video Marked attempts to trace the *Aalmuhammed* factors. First, he asserts

that he "exercised total control over the work." Pls.' Opp'n at 11. Morrill alleges that he shot the videos, chose the locations, directed every individual during shooting, and edited the final product by himself. Second, he contends that the intent of the parties was for Morrill to be the video's sole author. Morrill supports this claim with evidence that he affixed his name as the producer on several segments of Video Marked, and that he retained sole possession of the copies of Video Marked. Morrill does not discuss the third *Aalmuhammed* factor, the source of the audience appeal in the work.

Morrill's attempt to paint himself as the sole force behind Video Marked misses the primary purpose of his work: he was shooting a *music* video. The video's music was therefore the central component of the completed work. While Morrill's filming, editing, and producing may have helped shape and present The Marked's music for its audience, without the music itself Video Marked would not exist. Morrill's discussion of ownership and control omits the fact that it was Corgan and his band who wrote and performed the songs filmed by Morrill. Although Morrill may have directed the production and editing of the video, Corgan and The Marked had sole control over the writing and the performing of the video's music. *See Forward v. Thorogood*, 985 F.2d 604, 605 (1st Cir. 1993) ("The performer of a musical work is the author, as it were, of the performance."). In a music video, the creator of the songs and the creator of the images are both "the inventive or master mind[s]" whose work comes together to produce a unitary whole. *See Aalmuhammed*, 202 F.3d at 1229. Since both parties had creative control over separate and indispensable elements of the completed product, the first *Aalmuhammed* factor favors a finding of joint authorship.

The other two criteria discussed by the court in *Aalmuhammed* also suggest joint authorship of Video Marked. First, the parties' words and behavior evidences an intent to be co-authors of the video. Morrill videotaped The Marked as a promotional tool for the band; he admits that Video Marked was shown to audiences at venues where The Marked was performing. *See* Morrill Dep. at 126:23–127:2. In his Complaint, Morrill described Video Marked as a work "created with Corgan and his band." Compl. ¶ 13. In his deposition, Morrill referred to Video Marked on multiple occasions as a "collaboration" between himself and Corgan. *See* Morrill Dep. at 114:25–115:5 & 116:6–9. Further, in 1996 Morrill asked Corgan for his permission to market Video Marked. These statements and actions by Morrill are inconsistent with an intent to be the video's sole author. Instead, Morrill's words and actions appear to be "objective manifestations of a shared intent to be coauthors." *Aalmuhammed*, 202 F.3d at 1234.

Morrill's claim that the parties had agreed that Morrill was to be the sole author of Video Marked is based on, if anything, his own subjective intent. Morrill contends that his affixation of his name as the producer of the video signifies that he was the sole author. However, "producer" does not necessarily mean "author." *See Aalmuhammed*, 202 F.3d at 1232 (noting that an author of a movie might be a director, a star, a producer, a cinematographer, an animator, or a composer).

Morrill also asserts that since he retained possession of all of the copies of Video Marked, he was its sole owner. Mere possession of a videotape does not translate into copyright ownership, however. The case of *Forward v. Thorogood*, 985 F.2d 604 (1st Cir.1993), is directly on point. The plaintiff in *Forward* had paid for and arranged recording ses-

sions for the band, George Thorogood and the Destroyers. After the sessions were complete, the band had agreed that the plaintiff could keep the tapes for his own enjoyment. Later, the plaintiff claimed that his possession of the tapes made him the sole owner of the copyright to the tapes. The First Circuit upheld the district court's determination that the mere agreement by the band that the plaintiff could have physical possession of its recording tapes did not mean that band had consented to convey its interest in the copyright of those tapes to the plaintiff. *Id.* at 606. Like the plaintiff in *Forward,* Morrill's possession of the copies of Video Marked does not translate into sole copyright ownership of the tapes. Further, Morrill's own failure to trace or recover his missing copy of Video Marked, after he suspected that Corgan had taken it, discredits his claim of sole ownership.

Finally, Morrill's own statements, made during his deposition, reveal the parties' shared intent to create a joint work. In recounting his 1996 conversation with Corgan in which Morrill requested permission to use Video Marked, Morrill stated, "I said, 'Billy, now that you have achieved this superstar status, don't you think that *our early collaborations* have certain marketability?' " Morrill Dep. at 115:2–5 (emphasis added). When Corgan turned down Morrill's offer, Morrill recalled thinking, "I appreciated an artist not being satisfied with the quality of *his work* and not wanting to have it marketed." Morrill Dep. at 115:23–25 (emphasis added). Morrill remembered that Corgan "expressed an opinion on not wanting [Video Marked] to be marketed because of the poor audio quality on his end. He loved the video aspects that I took care of." Morrill Dep. at 116:13–15. Thus, Morrill's own deposition describes a shared intent to be joint authors; the parties agreed that Morrill

would execute "video aspects" and Corgan would supply the music.

Morrill does not discuss the third *Aalmuhammed* factor, the source of the audience appeal of the work. *See Aalmuhammed,* 202 F.3d at 1234. At the time when Video Marked was first displayed, at the clubs where The Marked was playing, the appeal of the work presumably was based on the audience's ability to hear additional performances by the band and to view the band in a different light. After Corgan's new band, The Smashing Pumpkins, gained success, the appeal of "View Marked" was most likely based on the audience's ability to view images of a younger Corgan. This is suggested by the packaging for Vieuphoria, which advertises "super secret, super special extra stuff shot by the band." Since the audience appeal, then, rests both on the video's visual aspects and on the composition and performance of the music, this factor also weighs in favor of finding View Marked to be a joint work.

Notwithstanding the *Aalmuhammed* factors, Morrill additionally asserts that the certificate of registration he obtained from the Register of Copyrights demonstrates that he is the sole author of Video Marked. This registration did not occur until 1998, however, about twelve years after the video's initial publication. Section 410(c) of the Copyright Act states that a certificate of registration is prima facie evidence of the validity of the copyright only if registration occurred "before or within five years after first publication of the work." 17 U.S.C. § 410(c). In cases where registration occurs more than five years after initial publication, "[i]t is within the court's discretion what weight to give the copyright registrations in determining the validity of the copyright interests of those works for which plaintiffs are not entitled to an automatic presumption of validity." *Religious Tech, Center v. Net-*

com *On–Line Comm. Serv., Inc.,* 923 F.Supp. 1231, 1242 (N.D.Cal.1995).

Here, as discussed above, all three factors discussed by the *Aalmuhammed* court point towards a finding of joint authorship for Video Marked. This music video was created by two authors, the video's producer and the band itself, with the intention that their respective contributions be merged into inseparable parts of a unitary whole. In discussing the question, "Who, in the absence of a contract, can be considered an author of a movie?" the Ninth Circuit in *Aalmuhammed* stated that depending on the type of movie, different individuals might be considered its author. Most significantly, the court noted, "[w]here the visual aspect of the movie is especially important, the chief cinematographer might be regarded as the author. And for, say, a Disney animated movie like 'The Jungle Book,' [the author] might perhaps be the animators and the composers of the music." *Aalmuhammed,* 202 F.3d at 1232. Similarly, for a music video, authorship is found in both the band's music and the director's visual animation of the band.

In the case of a sound recording, the law is clear: absent an employment relationship or express assignment of copyright, the copyright for the sound recording "will be either exclusively in the performing artists, or (assuming an original contribution by the sound engineers, editors, etc., as employees of the record producer), a joint ownership between the record producer and the performing artists." M.

Nimmer & D. Nimmer, 1 *Nimmer on Copyright* § 2.10[A][3] (2001). The case of a music video is equally clear: absent a written agreement, the copyright for the music video is a joint ownership between the performing artists and the video's producer (assuming an original contribution by the producer or an employee of the producer).[1] Therefore, this court finds that Corgan is a joint author of View Marked.

■ As a joint author, Corgan cannot be held liable for copyright infringement based on his use of View Marked in The Smashing Pumpkins' video, Vieuphoria. Each author of a joint work is a tenant in common. *See Picture Music, Inc. v. Bourne, Inc.,* 314 F.Supp. 640, 646 (S.D.N.Y.1970). "A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright." *Oddo v. Ries,* 743 F.2d 630, 632–33 (9th Cir. 1984). The fact that Corgan used only visual elements of View Marked in Vieuphoria does not subject him to liability for copyright infringement; since a joint work is created as a unitary whole, a joint author can use or license any portion of the joint work without infringing its copyright. *Id.* at 633. Morrill therefore has no standing to sue Corgan for infringement of the copyright in View Marked.

■ Finally, Corgan's position as a joint author of View Marked gives him the power to grant a non-exclusive license for the use of this work. *See Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 558–59 (9th Cir. 1990). Consistent with this right, Corgan

1. Here, Morrill's contribution to the video was original. Defendants argue in the alternative that Morrill has no copyright interest in Video Marked since he has pointed to no specific conversation or document suggesting that Corgan and The Marked gave Morrill any right to exploit the filmed footage of their performance. Defendants, however, have not proffered any evidence suggesting that Morrill created Video Marked as a "work for hire."

*See Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–53, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). Absent evidence of an agreement that Morrill's contributions to the video were meant to be that of an employee of the band, Morrill's original work as a producer and director of the video satisfies the requirements for establishing joint authorship of Video Marked, as discussed above.

granted Defendant Virgin Records America a non-exclusive licence to distribute Vieuphoria, which contained scenes from View Marked. A non-exclusive license to use a joint work need not be explicit. *See id.* By conveying a video that used material from his joint work, Corgan impliedly granted a non-exclusive license to Virgin to distribute this material. Virgin, as a non-exclusive licensee of a copyright co-owner, therefore cannot be subject to copyright liability for its use of Video Marked.

Based on the foregoing discussion, Defendants' Motion for Summary Judgment on Plaintiffs' claim of copyright infringement is *granted.*[2]

## B. Breach of Confidence

Morrill, in his Complaint, alleges that Defendant Corgan violated his confidence by disclosing the creative ideas embodied in Video Marked, despite Corgan's agreement not to reveal these ideas. Corgan argues that Morrill's claim has no merit because there was no agreement to keep Video Marked confidential. Corgan asserts that Video Marked was in fact created to promote the band to its audience. Morrill's opposition does not address his claim for breach of confidence. Further, Plaintiffs' counsel indicated during oral argument that Plaintiffs were withdrawing their claim for breach of confidence. Therefore, Defendant Corgan's Motion for Summary Judgment on this claim is *granted.*

## C. Fraud and Deceit

■ Plaintiffs' third cause of action alleges Fraud and Deceit against Defendant Corgan. In his Complaint, Morrill contends that Corgan promised he would compensate and credit Morrill if Corgan made any future use of Video Marked. Corgan's Motion for Summary Judgment refutes this alleged promise by pointing to Morrill's deposition. When asked in detail about each occasion in which he spoke with Corgan, Morrill failed to mention any promise by Corgan that Morrill might receive compensation for any future use of Video Marked.

In his opposition to Defendants' Motion for Summary Judgment, Morrill abandons this basis of his fraud claim and attempts to assert a new one. Morrill's opposition argues that Corgan's 1996 statements to Morrill, that Corgan did not want to market Video Marked because he was unhappy with its sound quality, were made to induce reliance on the part of Morrill so that Morrill would not bring suit for copyright infringement before the statute of limitations on his claims had run. Morrill's opposition alleges: "Since the three-year statute of limitations on Copyright infringement was less than a year from running, Corgan lied to him in order to induce him not to take any legal action. With a year to go on the statute, Corgan figured that if Morrill never learned the truth, that he would be home free." Pls.' Opp'n at 14.

Not only is Morrill's new argument far-fetched, but also it does not provide a basis for maintaining a cause of action for fraud. Since Corgan is a joint author of Video Marked, any use he made of this video did not infringe its copyright. Therefore, Corgan's 1996 statements did not cause any detrimental reliance on the part of Morrill. Defendants' Motion for Summary Judgment on Plaintiffs' claim for fraud and deceit is *granted.*[3]

---

**2.** Since this Court finds that Defendants are not liable for copyright infringement, it does not address Defendants' arguments regarding statute of limitations or laches.

**3.** Defendants' Motion for Summary Judgment on Plaintiffs' claims for declaratory relief and injunctive relief are also *granted* since both of these claims are dependant on the alleged

## IV.

### *Conclusion*

For the reasons stated above, Defendants' Motion for Summary Judgment is hereby *granted*.

IT IS SO ORDERED.

wrongdoing described in the copyright, breach of confidence and fraud claims.