**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-2177**

---

ELI BROWN, III,

Plaintiff - Appellant,

versus

MICHAEL C. FLOWERS, a/k/a Mike City,

Defendant - Appellee.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Durham.  N. Carlton Tilley, Jr., Chief District Judge.  (CA-02-862-NCT)

---

Argued: May 23, 2006               Decided: July 28, 2006

---

Before TRAXLER and GREGORY, Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.  Judge Gregory wrote a separate opinion concurring in the judgment in part and dissenting in part.

---

**ARGUED:** Thomas Haywood Stark, STARK LAW GROUP, P.L.L.C., Chapel Hill, North Carolina, for Appellant.  Reginald K. Brown, Los Angeles, California, for Appellee.  **ON BRIEF:** Seth A. Neyhart, STARK LAW GROUP, P.L.L.C., Chapel Hill, North Carolina, for Appellant.  Stephen E. Robertson, ROBERTSON, MEDLIN & TROUTMAN, P.L.L.C., Greensboro, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.  See Local Rule 36(c).

PER CURIAM:

In the present civil action based upon federal question jurisdiction, Eli Brown, III (Plaintiff) sued Michael Flowers (Defendant) for violation of the Copyright Act of 1976 (the Copyright Act), Pub. L. No. 94-553, 90 Stat. 2541 (1976), breach of contract under North Carolina common law, fraudulent concealment under North Carolina common law*, breach of fiduciary duty under North Carolina common law, and violation of North Carolina's statutory prohibition against unfair and deceptive trade practices, N.C. Gen. Stat. §§ 75-1.1 et. seq. Additionally, Plaintiff alleged a claim seeking a partnership accounting under the North Carolina Uniform Partnership Act, N.C. Gen. Stat. § 59-52.

Defendant moved to dismiss the entire complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)). Although the district court granted Rule 12(b)(6) dismissal of Plaintiff's federal copyright claim, it allowed Plaintiff's remaining state law claims to proceed. Defendant subsequently moved for summary judgment on the remaining state law claims, which motion the district court granted in toto.

Plaintiff noted this timely appeal. On appeal, Plaintiff challenges the district court's Rule 12(b)(6) dismissal of his federal copyright claim and the district court's entry of summary

---

*With respect to the fraudulent concealment claim, Plaintiff pled an alternative cause of action alleging negligent misrepresentation under North Carolina common law.

- 2 -

judgment in favor of Defendant with respect to his remaining state law claims.

Our review of the district court's Rule 12(b)(6) dismissal of the Plaintiff's federal copyright claim is de novo and focuses only on the legal sufficiency of the complaint. Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). A complaint need not "*forecast evidence* sufficient to *prove* an element" of the claim. Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002). Rather, the complaint need only allege facts sufficient to state the substantive elements of the claim. Id. In conducting our de novo review of the sufficiency of a complaint to state a claim for relief under Rule 12(b)(6), we "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts," and "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., 213 F.3d at 180.

Whether a party was entitled to summary judgment is a question of law, which we review de novo. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a

district court's grant of summary judgment, we must construe the facts in the light most favorable to the non-moving party, here, Plaintiff. Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

Having thoroughly reviewed the district court's opinions and the parties' briefs and submissions on appeal, and having heard oral argument in this case, we conclude that the district court did not err in granting Rule 12(b)(6) dismissal of Plaintiff's federal copyright claim, nor did it err in granting summary judgment in favor of Defendant with respect to Plaintiff's remaining state law claims. We, therefore, affirm on the reasoning of the district court. Brown v. Flowers, C/A No.: 1:02-CV-00862 (M.D.N.C. Sept. 14, 2005) (granting Defendant's motion for summary judgment with respect to all state law claims); Brown v. Flowers, 297 F. Supp. 2d 846, 851-53 (M.D.N.C. Dec. 12, 2003) (granting Rule 12(b)(6) dismissal of federal copyright claim).

Finally, we are compelled to respond to two points made by the dissent. First, even assuming arguendo, as the dissent would recognize, that an individual who, in collaboration with another, provides a substantial original contribution to a copyrightable work qualifies for authorship status in the joint-work context of the Copyright Act, Plaintiff's complaint fails to state, for Rule 12(b)(6) purposes, a copyright claim in the joint-work context. Contrary to the dissent's assertion otherwise, Plaintiff's

- 4 -

complaint does not allege "that he made significant engineering contributions in producing Flowers's R&B recordings." Post at 24. In fact, Plaintiff's complaint lacks even a single allegation that he made any creative, original, or expressive contribution to the song recordings at issue. Rather, at most, Plaintiff's complaint generically alleges that he acted as a recording engineer and producer of the songs at issue. In an attempt to morph this generic allegation into one of significant creative contribution able to withstand Defendant's Rule 12(b)(6) motion, the dissent relies upon Plaintiff's detailed explanations in his appellate briefs (opening and reply) regarding the substantially creative role that a recording engineer and producer plays in recording a song of the rhythm and blues genre. Clear precedent requires that the allegations to be considered in ruling on a Rule 12(b)(6) motion be alleged in the complaint, with no exception for consideration of embellishments and explanations offered in an appellate brief. See Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002) (dismissing negligence claim pursuant to Rule 12(b)(6) because complaint did not allege facts sufficient to state all elements of negligence claim).

Second, we note the dissent's wholly misplaced reliance upon Plaintiff's affidavit, executed February 5, 2003 (Plaintiff's February 2003 Affidavit), as creating a genuine issue of material fact as to whether Defendant copyrighted and licensed recordings

that were assets of the Hectic Records Partnership.  The dissent essentially relies upon this affidavit as the sole pillar of evidentiary support in favor of its position that the district court erred in granting summary judgment in favor of Defendant with respect to Plaintiff's state law claims for a partnership accounting/breach of contract, breach of fiduciary duty, and unfair and deceptive trade practices.

There are two significant problems with the dissent's reliance upon Plaintiff's February 2003 Affidavit.  First, Plaintiff never submitted this affidavit to the district court in opposition to Defendant's summary judgment motion, nor did Plaintiff refer to it in his January 20, 2005 memorandum in opposition to such motion or do anything else to alert the district court that the affidavit existed.  Accordingly, although Plaintiff had, almost two years prior, submitted his February 2003 Affidavit to the district court in opposition to a change of venue motion brought by Defendant, the district court had no notice that it should consider such affidavit in assessing the merits of Defendant's summary judgment motion. Under Federal Rule of Civil Procedure 56(e), if Plaintiff wanted certain evidence considered in opposition to Defendant's summary judgment motion, Plaintiff was required to point it out to the district court. Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the

adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). See also Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030-31 (9th Cir. 2001) (affirming grant of summary judgment in favor of defendant despite existence in record of plaintiff's genuine-issue-of-material-fact-creating sworn declaration, filed two years prior, in response to unrelated motion, because circuit precedent, which follows majority view, holds that "district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein"); Accord id. at 1031 (district court need not examine entire file for evidence establishing a genuine issue of fact, where evidence is not set forth in opposition papers to motion for summary judgment with adequate references so evidence can be conveniently found); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998) (same); Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (same); L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561, 567 (7th Cir. 1993) (same); Guarino v. Brookfield Township Trustees, 980 F.2d 399, 404-06 (6th Cir. 1992) (same).  Because Plaintiff failed to put the district court on notice that he wanted the district court to consider his February 2003 Affidavit in assessing the merits of Defendant's summary judgment motion, we cannot now fault the district court for

failing to consider it.  To hold otherwise would encourage parties to sandbag the district court.

The second significant problem with the dissent's reliance upon Plaintiff's February 2003 Affidavit is that the contents of such affidavit are too vague and conclusory to create a genuine issue of material fact to stave off Defendant's summary judgment motion.  See Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) (affirming grant of summary judgment because plaintiff's "conclusory statements, without specific evidentiary support," were insufficient to create a genuine issue of fact).  For example, Plaintiff conclusorily asserts in his February 2003 Affidavit that "[t]he form and substance of 'I Wish' and 'Lunch or Dinner' and literally hundreds of other songs resulted from work done for the Hectic Records partnership by Flowers and I."  (J.A. 61).  This assertion is nothing more than the type of conclusory allegation that is made in a party's complaint at the initial pleading stage of litigation.  At the summary judgment stage, however, specific evidentiary support is needed to support such a conclusory assertion.  Causey, 162 F.3d at 802.  For a second example, Plaintiff's February 2003 Affidavit asserts that he has in his possession CDs recorded in his Durham studio that show, what he vaguely opines to be, only "minor alterations" between the commercially released versions of "'I Wish'" and "[']Lunch or Dinner'" and the versions recorded in his Durham studio.  (J.A.

- 8 -

61).  Plaintiff's February 2003 Affidavit does not offer even a single example of what he deems a minor alteration and the record is otherwise devoid on the point.  Indeed, Plaintiff did not, as far as the record reveals, submit as evidence the CDs to which he refers as the proof supporting the most basic allegations of his lawsuit.  See Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (explaining that the party opposing summary judgment "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another").  In sum, Plaintiff's case lacked sufficient evidence for a jury to find in his favor with respect to his state law claims.

In conclusion, we affirm.

AFFIRMED

GREGORY, Circuit Judge, concurring in the judgment in part and dissenting in part:

This case presents a novel question of federal copyright law. Nevertheless, the majority adopts the cursory reasoning of the district court in upholding that court's Rule 12(b)(6) dismissal of Eli Brown's federal copyright claim, and its grant of summary judgment as to Brown's remaining state law claims. Because I cannot agree with that reasoning or the results reached by the district court with respect to the copyright claim and several of the state law claims, I dissent in part. I concur only in the holding that summary judgment was appropriate as to Brown's fraudulent concealment and negligent misrepresentation claims.

## I.

Brown and Michael Flowers met in Durham, North Carolina, in the late 1980s, while Flowers was studying music at North Carolina Central University. In 1989, Flowers hired Brown to be his manager, and the parties continued under that arrangement until 1992, when Flowers moved to Atlanta, Georgia. In 1995, shortly after Flowers moved back to Durham, he and Brown formed a partnership, which they later named "Hectic Records." According to Brown, the partners endeavored (1) to produce low cost 12" vinyl recordings for play in clubs; (2) to provide engineering and remixing services to other recording artists; and (3) to market Flowers's songwriting talents and Brown's engineering and

production skills to established recording artists.  J.A. 211-14. Brown later suggested to Flowers that the partners expand the scope of their original business plan to include recording R&B songs and selling them to other artists.  According to Brown, the parties agreed to divide the proceeds derived from these undertakings equally.

Over the course of the next four years, Brown and Flowers continued their Hectic Records partnership.  For the most part, they achieved only modest success.  In 1996, the partnership recorded an album for the group "Lost Souls."  Brown worked on the production and engineering responsibilities for the album, while Flowers focused on marketing.  Flowers ultimately signed a distribution deal with Ichiban Records to distribute the Lost Souls album.  Unfortunately for the Hectic Records partnership, the album was not a commercial success.

At the same time Brown and Flowers were working on the Lost Souls album, Flowers, with Brown's assistance, recorded hundreds of demo R&B songs in Brown's Durham studio.  Although it is undisputed that Flowers composed and performed initial versions of many of these songs on his personal recording device called an "iDAC," Brown contends that Flowers invariably brought copies of his unrefined iDAC recordings to Brown's Durham studio.  On these occasions, Brown, in his capacity as a sound engineer and producer, added riffs and beats in compiling a master recording.  In so

doing, Brown was responsible for establishing tempo, ambiance, echo, reverberation, treble, bass, frequency, gain, bandwith, distortion, and equalizing, all of which, he argues, are distinctive and essential elements of R&B recordings.

According to Brown, in 1999, Flowers traveled to New York and New Jersey ostensibly to promote songs that the partners had recorded under their Hectic Records label. During this trip, Flowers arranged to distribute one of the songs that Brown had engineered and produced, entitled "I Wish," to Carl Thomas and producer Sean "Puffy" Combs. Thomas eventually re-recorded "I Wish" in New York and included it on an album that went on to achieve platinum status.

By the end of 1999, Brown learned that "I Wish" was getting significant air-time on radio stations in the New York area. According to Brown, when he confronted Flowers with his discovery, Flowers admitted that he had sold a couple of songs to Carl Thomas, but reassured Brown that he "could expect a check from Puffy Combs." J.A. 215. Despite this assurance, Brown never received the promised check. During a subsequent conversation, Flowers expressed his desire to terminate the partnership and told Brown that he would never receive proceeds from the sale of "I Wish."

After dissolving the Hectic Records partnership in 1999, Flowers moved to California with copies of several master recordings that he and Flowers had produced in Durham. At some

point thereafter, Flowers applied for and received copyright registrations for these recordings.[1] According to Brown, Flowers subsequently licensed these recordings to other artists, who, in turn, made re-recordings. As of this appeal, Flowers resides in California, where he works for Warner-Chappell Music as a song writer.

In 2002, Brown filed suit against Flowers in the Middle District of North Carolina under the Copyright Act of 1976, 17 U.S.C. § 101 et seq. In support of his copyright claim, Brown asserted alternative theories of recovery. Brown contended that, by operation of the work-for-hire provision of 17 U.S.C. § 101, he was the exclusive owner of the copyrights in the recordings, and, accordingly, that Flowers had infringed on his copyrights. Alternatively, Brown asserted that he and Flowers were joint owners of the copyrights, and, therefore, that he was entitled to share in the royalties derived therefrom. In addition to his federal copyright claim, Brown asserted state law claims for partnership accounting,[2] breach of fiduciary duty, fraudulent concealment,

---

[1]The record does not indicate when this occurred.

[2]Although Brown also asserted a separate "Breach of Contract" claim, this claim was interrelated with--and provided the basis for--his partnership accounting claim. In short, Brown contended that because Flowers breached the terms of their partnership agreement, Brown was entitled to an accounting under North Carolina law. Accordingly, I will treat the breach of contract and accounting claims as a single "partnership accounting" claim.

negligent misrepresentation, and unfair and deceptive trade practices.

Flowers filed a motion to dismiss the copyright claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion in its entirety, concluding that Brown could not establish ownership rights in the copyrighted songs. Shortly thereafter, Flowers filed a motion for summary judgment on the remaining state law claims. The district court granted summary judgment as to all state law claims, concluding that there was no evidence that the songs in question were recorded at Brown's studio or that Brown had played any role in their production. In so doing, the court did not specifically discuss or analyze the merits of Brown's claims for breach of fiduciary duty, fraudulent concealment, negligent misrepresentation, and unfair and deceptive trade practices.

Brown timely appealed, contending that the district court erred in dismissing his copyright claim pursuant to Rule 12(b)(6) and in granting summary judgment on Brown's various state law claims. As discussed below, I conclude that the district court erred in dismissing Brown's copyright claim and all but two of his related state law claims.

I begin with the district court's Rule 12(b)(6) dismissal of Brown's federal copyright claim.  This court reviews de novo a Rule 12(b)(6) dismissal, "accepting as true the factual allegations of the challenged complaint and . . . viewing those allegations in the light most favorable to the plaintiff."  Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir.), cert. denied, 126 S. Ct. 647 (2005) (internal citations omitted).  "[A] district court may dismiss a complaint for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief."  Id.

A.

As a threshold matter, we must examine the nature of the copyrights at issue.  "Copyright protection extends to two distinct aspects of music: (1) the musical composition, which is itself usually composed of two distinct aspects--music and lyrics; and (2) the physical embodiment of a particular performance of the musical composition, usually in the form of a master recording."  Staggers v. Real Authentic Sound, 77 F. Supp. 2d 57, 61 (D.D.C. 1999); see also 6 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 30.03 (2003)[hereinafter Nimmer] ("Copyright ownership of the physical embodiment of the performance of a musical composition

(e.g., a master recording) is distinct from the ownership of the copyright in the musical composition itself.").

Brown concedes that Flowers composed the music and lyrics for the recordings at issue. Accordingly, he does not dispute that Flowers had the exclusive right to copyright compositions that embodied these elements, had he chosen to do so. Brown contends, however, that Flowers copyrighted and subsequently licensed to other artists the physical embodiments of those compositions--i.e., the master recordings that Brown had engineered and produced-- instead of merely copyrighting his raw compositions. Indeed, Brown asserts that "the only media in which any copyright has been fixed in connection with this case, as is common with 'R&B' music and the beats and riffs they contain," are the master recordings. Appellant's Reply Br. at 1-2. In support of this argument, Brown contends that re-recordings made by other artists contain beats and riffs that are similar or virtually identical to the beats and riffs that Brown had incorporated into Flowers's iDAC compilations.[3]

In reviewing the propriety of the district court's Rule 12(b)(6) dismissal of Brown's copyright claim, I accept as true

---

[3]Although the panel expressed concern at oral argument that Brown had not offered to play copies of these recordings to the district court in order to demonstrate these similarities, the plaintiff was not obligated to put on evidence at the motion to dismiss stage, where allegations in the complaint are sufficient.

- 16 -

Brown's contention that the copyrights at issue extend to the master recordings, and not to the compositions.

B.

Even though Brown alleges that the copyrights extend to the master recordings, Brown must further allege that he is entitled to an ownership interest in those copyrights in order to state a claim under the Copyright Act. Brown posits two grounds to support his contention that he has an interest in the copyrights: the work-for-hire and joint-work provisions of 17 U.S.C. § 101. The district court correctly concluded that Brown's work-for-hire theory of copyright ownership was insufficient as a matter of law.[4] However,

---

[4]Although it is typically the case that the author of a work is the owner of the copyright in that work, the Copyright Act recognizes an exception where the work is made for hire. See 17 U.S.C. § 101. Under the statute, a "work made for hire" is either "a work prepared by an employee within the scope of his or her employment," or a specially commissioned work. Id. In either case, the Copyright Act provides that the employer, rather than the author-employee, holds the copyright in the work, unless their written agreement provides to the contrary. Id.; Comty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989).

Brown first claims that the recordings at issue are works for hire and that he is the sole owner of the copyrights in those works. Thus, Brown contends that Flowers is liable to him for infringement. As the district court correctly concluded, however, Brown has not alleged that Flowers was his employee or that he specially commissioned Flowers to record songs for him. To the contrary, the central allegation in Brown's complaint is that he and Flowers were business partners who jointly endeavored for the success of their Hectic Records label. Thus, the district court correctly concluded that Brown had not alleged ownership under work-for-hire doctrine.

- 17 -

I believe that the district court erred in reaching a similar conclusion with respect to Brown's joint-work theory.

Brown argues that the master recordings constitute joint works, for which he made an original contribution as a sound engineer and producer. Specifically, Brown contends that these recordings constitute a compilation of Flowers's lyrical and musical contributions and his engineering and production contributions. Brown alleges that, by virtue of his and Flowers's collaborative efforts, the former partners own equal and undivided interests in the copyrights of their joint works--the master recordings. Thus, Brown asserts that he has the right to an equal share of the profits derived therefrom. See Thomson v. Larson, 147 F.3d 195, 199 (2d Cir. 1998).

A "joint work" under the Copyright Act is one "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The language of the statute, therefore, provides that for a work to be a "joint work," there must be (1) a copyrightable work, (2) two or more "authors," and (3) a mutual intent of the authors to merge their work. See id. See also Aalmuhammed v. Lee, 202 F.3d 1227, 1234 (9th Cir. 2000). The parties do not dispute that the first requirement is satisfied. Therefore, the dispositive inquiry focuses on whether Brown has sufficiently alleged authorship and mutual intent.

- 18 -

i.

Because the statute does not define the term "authors," two competing interpretations have emerged. The significant issue that distinguishes these two interpretations is whether a joint-work claimant must have contributed material that, standing alone, would be entitled to copyright protection, or whether only the combined result of the parties' efforts must be copyrightable.

The Second and Ninth Circuits have espoused the former interpretation, requiring a joint-work claimant to demonstrate that his contribution was independently copyrightable. See Childress, 945 F.2d at 507 ("It seems more consistent with the spirit of copyright law to oblige all joint authors to make copyrightable contributions, leaving those with non-copyrightable contributions to protect their rights through contracts."); Aalmuhammed, 202 F.3d at 1234 ("A joint work in this circuit requires each author to make an independently copyrightable contribution' to the disputed work.") (internal quotation marks omitted).

Applying this standard, the Second Circuit in Childress concluded that an actress who had taught the playwright about her true-life character's career was not an author of the play. 945 F.2d at 509. Similarly, in Aalmuhammed, the Ninth Circuit rejected the contention that the plaintiff, an Islamic scholar who had consulted with director Spike Lee during the filming of the movie Malcolm X, qualified as an author. 202 F.3d at 1236. In so doing,

the court in <u>Aalmuhammed</u> announced that "[a] creative contribution does not suffice to establish authorship of a movie."  <u>Id.</u>

Professor Nimmer argues against a requirement that a contribution be independently copyrightable, primarily on the grounds that it is not supported by the plain language and legislative history of 17 U.S.C. § 101.  <u>Nimmer</u> § 6.07[A][1] ("That language contains no requirement that each contribute an independently copyrightable component to the product.").  This is a valid criticism.

Because the statute does not provide an express definition for the term "author," I would "construe [this] statutory term in accordance with its ordinary or natural meaning."  <u>FDIC v. Meyer</u>, 510 U.S. 471, 476 (1994).  As it is understood in this context, the word "author" refers to a person "who is the source of some form of intellectual or creative work."  <u>Webster's Third International Dictionary</u> 146 (2002).  An "author" is further defined as "one that originates, makes, or gives existence," or "one that brings about or is the efficient cause of an action."  <u>Id.</u>  Thus, the term "author" merely connotes some significant form of original expression made in connection with an artistic endeavor.

The legislative history further undermines the notion that authorship, as it is understood in the joint-work context, requires an independently copyrightable contribution.  The House Report accompanying the Copyright Act of 1976 provides:

> [A] work is joint if the authors collaborated with each other, or if each of the authors prepared his or her contribution with the knowledge and intention that it would be merged with the contributions of other authors as "inseparable or interdependent parts of a unitary whole." The touchstone here is the intention, at the time the writing is done, that the parts be absorbed or combined into an integrated unit . . . .

H.R. Rep. No. 94-1476, at 120 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5736. As Professor Nimmer notes, the legislative history "elevates intention as the touchstone, without placing any further parsing as to the copyrightable status of each individual component that the parties intended to contribute to the work as a whole." Nimmer § 6.07[A].

According to Professor Nimmer, the contributions of putative joint authors do not have to be equal, "either quantitatively or qualitatively, in order to constitute them as joint authors." Id. Although Nimmer recognizes that the contribution of each must be more than "de minimus," he takes the position that an interpretation of authorship as requiring an independently copyrightable contribution is overly restrictive and potentially inequitable. See id. In support of this interpretation, Nimmer posits the following hypothetical:

> [I]f authors A and B work in collaboration, with A contributing sparkling plot ideas and B weaving them into a completed screenplay, it cannot be doubted that both have made more than a de minimus contribution to the resulting script. On that basis both A and B should be considered joint authors of the work, even though, standing alone, plot ideas may not be copyrightable.

Id.

- 21 -

With its recent decision in <u>Gaiman v. McFarlane</u>, 360 F.3d 644, 659 (7th Cir. 2004), a panel of the Seventh Circuit adopted Nimmer's interpretation of authorship. The facts of that case were as follows. The defendant, the creator and illustrator of a faltering comic book series, invited the plaintiff to write a script for one issue. <u>Id.</u> at 649. Subsequently, the plaintiff wrote a script in which he introduced three new characters to the series. <u>Id.</u> Based on the plaintiff's verbal description of the characters and his written dialogue, the defendant drew these characters into the series. <u>Id.</u> Thereafter, the plaintiff brought suit, contending that he was entitled to an ownership interest in the copyright by virtue of the joint-work provision. <u>Id.</u> at 650.

With respect to the authorship requirement, Judge Posner recognized that although a contribution of "some original expression" is required for authorship status, he rejected the notion that such contribution must always be independently copyrightable. <u>Id.</u> at 658. In so doing, Judge Posner reasoned as follows:

> But where two or more people set out to create a character jointly in such mixed media as comic books and motion pictures and succeed in creating a copyrightable character, it would be paradoxical if though the result of their joint labors had more than enough originality and creativity to be copyrightable, no one could claim a copyright. That would be peeling the onion until it disappeared. The decisions that say, rightly in the generality of cases, that each contributor to a work must make a contribution that if it stood alone would be copyrightable weren't thinking of the case in which it

- 22 -

couldn't stand alone because of the nature of the particular creative process that had produced it.

Id. at 660. Applying this logic, the court concluded that the plaintiff's creative contribution to the comic book series, although not independently copyrightable, was sufficient to accord him authorship status.[5] Id.

Thus, as it stands today, there is a division of authority as to whether a joint-work claimant must make an independently copyrightable contribution in order to satisfy the authorship requirement. As noted above, our court has never addressed this issue, and, therefore, the district court had to determine which approach to follow. After briefly identifying the lead cases from the Second and Ninth Circuits, and without discussing the contrary view of Professor Nimmer and Judge Posner, the district court determined (1) that an allegation of an independently copyrightable contribution was required to show authorship and (2) that Brown had failed to make such an allegation. I disagree with both conclusions.

First, I disagree that an independently copyrightable contribution is always required to show authorship. As Professor Nimmer has recognized, "copyright's goal of fostering creativity is

_____

[5]It is unclear whether this holding is limited to "mixed media" works. Compare Gaiman, 360 F.3d at 658-60, with Erickson v. Trinity Theatre, Inc., 13 F.3d 1061 (7th Cir. 1994) (requiring independently copyrightable contribution for theater companies' suggestions to the playwright).

- 23 -

best served . . . by rewarding all parties who labor together to unite idea with form, and that copyrightable protection should extend both to the contributor of the skeletal ideas and the contributor who fleshes out the project." Nimmer § 6.07[A][3][a].

Accordingly, I would recognize that an individual who, in collaboration with another, provides a substantial original contribution to a copyrightable work satisfies the authorship requirement, regardless of whether his contribution, standing alone, would be individually copyrightable. Although this standard necessarily entails a more exhaustive assessment of the respective contributions of the parties and the particular media at issue, I believe that it is a more thorough and equitable approach. Further, this standard is more consistent with the plain language and legislative history. Because Brown has alleged that he made significant engineering contributions in producing Flowers's R&B recordings, he has satisfied this less stringent authorship standard.

However, even assuming that the district court correctly surmised that this court would adopt the approach of the Second and Ninth Circuits to require an independently copyrightable contribution, the district court failed to recognize that the allegations in Brown's Complaint satisfy this more stringent authorship standard. Brown alleges in his Complaint that he acted as recording engineer and producer of the master recordings. See

- 24 -

J.A. 2-3. As explained below, the few district courts to have addressed the authorship requirement within the specific context of the music recording industry have recognized that substantial engineering and production contributions accord authorship status.

In JCW Investments, Inc. v. Novelty Inc., 289 F. Supp. 2d 1023 (N.D. Ill. 2003), the district court noted that "[a] record producer may be an author when he or she is 'responsible for setting up the session, capturing and electronically processing the sounds, and compiling and editing them to make a final sound recording.'" Id. at 1032(quoting H.R. Rep. No. 94-1476, at 56 (1976)). Similarly, in Morrill v. J.M. Productions, 157 F. Supp. 2d 1120, 1122 (C.D. Cal. 2001), the district court noted that the plaintiff's contributions in producing and editing a music video satisfied "the requisite level of copyrightable expression necessary to support a claim of joint authorship." Id. at 1122. Even though the joint-work claimant in Morrill had not composed or performed the lyrics, the court nevertheless recognized that his contributions in producing, engineering, and editing the music video constituted a significant original contribution, such that he should be deemed an author of that work.[6] Id. at 1126.

---

[6]Because the defendant-performer successfully asserted a joint-work theory to defend against the plaintiff-producer's claim that the defendant-performer had infringed upon his exclusive copyright interest in the music videos, the district court granted summary judgment in favor of the defendant. Id. at 1127.

- 25 -

As noted above, Brown alleges that, in his capacity as a engineer and producer, he compiled master recordings of Flowers's performances. See J.A. 2-3. In that role, Brown explains that he was responsible for selecting and incoporating tempo, ambiance, echo, reverberation, treble, bass, frequency, gain, bandwith, distortion, and equalizing, all of which, he argues, are distinctive and essential elements of R&B recordings. Thus, accepting Brown's allegation as true, I conclude that Brown satisfies the authorship requirement for a joint work.

ii.

In addition to satisfying the authorship requirement, a joint-work claimant must demonstrate that both parties intended their contributions be "merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. As the Second Circuit recognized in Childress, parts of a unitary whole are inseparable "when they have little or no independent meaning standing alone." 945 F.2d at 505. Parts of a unitary whole are interdependent "when they have some meaning standing alone but achieve their primary significance because of their combined effect, as in the case of words and music of a song." Id.

As the Second Circuit recognized in Childress:

> Examination of whether the putative co-authors ever shared an intent to be co-authors serves the valuable purpose of appropriately confining the bounds of joint authorship arising by operation of copyright law, while leaving those not in a true joint authorship relationship with an author free to bargain for an arrangement that

> will be recognized as a matter of both copyright and contract law.

Id. Further, "since co-authors are afforded equal rights in the co-authored work, the 'equal sharing of rights should be reserved for relationships in which all participants fully intend to be joint authors.'" Thomson v. Larson, 147 F.3d 195, 201 (2d Cir. 1998) (quoting Childress, 945 F.2d at 509). In Thomson, the Second Circuit recognized that an important indicator of the parties' intent is whether a joint-work claimant has "decisionmaking authority" over the substance and form of a work. Id. at 202-03. The court in Thomson also recognized that the way in which the parties hold themselves out to third parties is also significant. Id. at 203. Finally, the court noted that the parties' written agreements with each other provides insight into whether they intended to create a joint work. Id. at 204.

To determine whether the parties intended to create a joint work, the Ninth Circuit has suggested its own three criteria: (1) whether the putative co-author exercises some measure of control over the venture; (2) whether the parties make objective manifestations of their shared intent to be co-authors; and (3) whether the audience appeal of the work is attributable to the contributions of both parties. See Alamuhammed, 202 F.3d at 1234. Although each of these factors should be considered, "[c]ontrol in many cases will be the most important factor." Id.

Thus, applying the requirements of the Second and Ninth Circuits, I recognize that Brown had to allege: (1) that he had significant decisionmaking authority over the form and substance of the master recordings; (2) that he and Flowers made objective manifestations of their intent to be co-authors to each other and to third parties; and (3) that the audience appeal of the master recordings was attributable to the contributions of both parties.

Because Brown alleges that he served as the engineer and producer of the master recordings, I conclude that he had significant decisiomaking authority over the substance and form of the master recordings. Thus, Brown satisfies the first requirement. Second, as to Brown's allegations that the parties collaborated over a period of four years in recording demo R&B songs under their Hectic Records partnership label and in attempting to distribute those recordings to third parties under that label, I conclude that Brown has sufficiently alleged that the partners made objective manifestations of their intent to be co-authors. Finally, because the audience appeal of R&B songs is attributable in large measure to their underlying riffs and beats, which, invariably, are incorporated into those songs by recording engineers and producers, I conclude that Brown's allegations satisfy the third requirement. Accordingly, the district court erred in concluding that Brown's allegations did not satisfy the mutual intent requirement.

- 28 -

### iii.

In sum, applying Brown's factual allegations to the statutory requirements of authorship and intent, I conclude that Brown has stated a claim under the joint-work provision of 17 U.S.C. § 101. Accordingly, I would vacate the district court's Rule 12(b)(6) dismissal of the copyright claim and remand for further proceedings.

### III.

Next, Brown contends that the district court erred in granting summary judgment to Flowers on his state law claims for partnership accounting, breach of fiduciary duty, fraudulent concealment, negligent misrepresentation, and unfair and deceptive trade practices. I conclude that the district court erred in granting summary judgment on all but the fraudulent concealment and negligent misrepresentation claims.

This court reviews de novo the district court's decision to grant the defendant's motion for summary judgment. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003). According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled

- 29 -

to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although we view the facts and inferences drawn therefrom in the light most favorable to Brown, the non-moving party, he nevertheless has the ultimate burden of demonstrating a genuine issue of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002).

A.

Brown alleges that Flowers breached their Hectic Records partnership agreement by failing to share half of those "monies earned by Flowers using music produced in Brown's Durham recording studio." J.A. 17. Further, Brown contends that Flowers failed to "share the proceeds of recording contracts [Flowers] has received from established record labels, artists, and production companies." Id. Accordingly, Brown argues that he is entitled an accounting of all profits derived from Flowers's misappropriation of the partnership assets.

Flowers concedes that he and Brown formed the Hectic Records partnership. Nevertheless, Flowers argues that Brown put forth no evidence that Flowers misappropriated the recordings made in Brown's Durham studio in a separate business endeavor. Brown disputes this contention, arguing that he presented sufficient

evidence that Flowers sold their collaborative recordings to third parties.  I agree.

North Carolina General Statute § 59-36, defines a partnership as "an association of two or more persons to carry on as co-owners of a business for profit."  More specifically, "[a] partnership is a combination of two or more persons of their property, effects, labor, or skill in a common business or venture, under an agreement to share the profits or losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business."  Compton v. Kirby, 577 S.E.2d 905, 912 (N.C. Ct. App. 2003).  Pursuant to North Carolina's Uniform Partnership Act, any partner who is "wrongfully excluded from the partnership business or possession of its property by his copartners" is entitled to a formal accounting.  N.C. Gen. Stat. § 59-52 (2005).

In concluding that Brown had not presented any evidence that the songs in question were recorded in the partners' Hectic Records studio or that he had contributed to their creation, the district court overlooked (or disregarded) Brown's affidavit.  In refuting Flowers's contention that he did not misappropriate partnership assets, Brown asserted as follows:

> When the agency agreement expired in 1992, Flowers left the Durham area for a time, but he returned in 1994 and at that time he and I hit upon the idea of the "Hectic Records" partnership.  Our understanding was that we would work together with me providing the capital, the studio and the recording equipment and he would provide

the musical ideas. Together with his musicianship and my engineering skills we would produce recordings for play in local clubs, to demo with recording artists and record labels and to eventually obtain a contractual relationship with a recording label. We agreed that any music we produced was a partnership asset and that any income produced by our joint labors would be equally divided between us. . . .

I am not and have never claimed to be a song writer. I do have skills in the field of musical engineering, and offered suggestions for refinements and changes to the earliest recordings of songs Flowers wrote called "I Wish" and "Lunch or Dinner," and nearly every other piece of music that Flowers wrote while we were in partnership. Although Flowers claims that all of this music, including "I Wish" and "Lunch or Dinner," was recorded outside of North Carolina, I have in my possession CD's recorded in my studio in Durham, North Carolina that shows that the only changes being made to music recorded pursuant to our partnership agreement are minor alterations. The form and substance of "I Wish" and "Lunch or Dinner" and literally hundreds of other songs resulted from work done for the Hectic Records partnership by Flowers and I.

J.A. 60-61. Brown's affidavit thus creates a genuine issue of material fact as to whether Flowers copyrighted and licensed the recordings that Brown had engineered and produced in his Durham studio. Stated differently, Brown's affidavit is sufficient to counter Flowers's contrary contention that the recordings were not partnership assets. Therefore, the district court erred in granting summary judgment to the defendant on the partnership accounting claim. See Fed. R. Civ. P. 56(c).

B.

Brown next argues that the district court erred in granting summary judgment to Flowers on his breach of fiduciary duty claim.

- 32 -

According to Brown, Flowers breached his fiduciary duty as a partner by self-dealing with partnership assets. As noted above, the district court did not specifically address this claim in its opinion granting summary judgment to the defendant. Thus, the majority's reliance on the reasoning of the district court is misplaced.

A fiduciary duty "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Abbitt v. Gregory, 160 S.E. 896, 906 (N.C. 1931). Under the Uniform Partnership Act, a partner is accountable as a fiduciary. See N.C. Gen. Stat. § 59-51. Accordingly, North Carolina law provides that:

> (a) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

Id.

As discussed above, Brown presented evidence that Flowers sold partnership assets to other artists and did not share the proceeds from those transactions with Brown. See J.A. 60-61. Although Flowers disputes this contention, Brown's affidavit is sufficient to create a genuine issue of material fact on this issue. As such, the district court erred in granting summary judgment to the defendant as to the breach of fiduciary duty claim.

C.

Brown further contends that the district court erred in granting summary judgment to the defendant on his unfair and deceptive trade practices claim.  Pursuant to North Carolina General Statute § 75-1.1, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are . . . unlawful."  Under North Carolina law, "conduct which constitutes a breach of fiduciary duty and constructive fraud is sufficient to support [an unfair and deceptive trade practices] claim."  Spence v. Spaulding and Perkins, Ltd., 347 S.E.2d 864, 866 (N.C. 1986).  Thus, because the district court erred in granting summary judgment on the breach of fiduciary duty claim, it also erred in granting summary judgment as to the unfair and deceptive trade practices claim.


D.

Finally, Brown raises claims of fraudulent concealment and negligent misrepresentation.  Again, the district court did not explicitly discuss these claims in its opinion.  Under North Carolina law, a party asserting a cause of action for fraudulent concealment or negligent misrepresentation must allege that he was denied the opportunity to investigate or that he could not have learned of the true facts by exercise of reasonable diligence.  Eastway Wrecker Serv. v. City of Charlotte, 599 S.E.2d 410, 414

(N.C. Ct. App. 2004). Brown alleged neither, and, therefore, the district court properly granted summary judgment on these two claims.

IV.

For the foregoing reasons, I would vacate the district court's Rule 12(b)(6) dismissal of Brown's federal copyright claim as well as the court's grant of summary judgment in favor of Flowers on the partnership accounting, breach of fiduciary duty, and unfair and deceptive trade practices claims. Therefore, I dissent with respect to those claims. I join the majority in affirming the district court's grant of summary judgment of the fraudulent concealment and negligent misrepresentation claims, but on my reasoning.